# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 50050 | **DATE** | 8/27/2010 |
| **CASE TITLE** | Sylvester v. Chandler, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion for summary judgment [124] is granted. Defendants Colgan, Cline, Noble, and Gravdahl are dismissed with prejudice from this case.

■ [ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiff, Wayne Sylvester, filed a four-count complaint pursuant to 42 U.S.C. § 1983 alleging that twenty-three defendants violated his Eighth Amendment rights while he was incarcerated at the Dixon Correctional Center ("Dixon"). Four defendants and all official capacity claims have already been dismissed by the court, along with an individual claim against defendant Chandler. Defendants Gravdahl, Colgan, Noble and Cline now move for summary judgment. Defendants argue that they are entitled to judgment because plaintiff failed to exhaust his administrative remedies. Plaintiff has not filed a response. For the reasons set forth below, the court grants defendants' motion.

### I. BACKGROUND

Plaintiff's complaint arises from an injury he sustained while working at the Dixon Opthalmic Industry Lab, and the subsequent medical treatment he received. The following facts are taken from plaintiff's complaint and defendants' undisputed statement of facts. They relate only to the defendants now moving for summary judgment, and are not meant to be an exhaustive recitation of the facts of this case.

On March 18, 2005, fellow inmate Rick Davila attacked plaintiff. Several staff members responded to the scene and transported plaintiff to Dixon hospital, where he was examined by physician's assistant Colgan. Plaintiff alleges that Colgan ordered a non-medical staff member to remove plaintiff's clothes so that an x-ray could be taken, and that the staff member forcefully removed three t-shirts and a necklace from around plaintiff's neck causing him excruciating pain and then numbness in his neck. Plaintiff further alleges that the x-ray revealed serious injury to his neck and he received emergency surgery. Plaintiff returned to Dixon on April 8, 2005 after receiving treatment and physical therapy at the University of Illinois Chicago (UIC).

Plaintiff filed two grievances relating to his injury and the subsequent care he received. Plaintiff filled out the first grievance on April 20, 2005 ("April grievance"). In that grievance, plaintiff makes several allegations against nurse Porter. Specifically, the grievance alleges that Porter: confiscated plaintiff's pillows and blankets on several occasions and that nurse Noble would recover them for him; pushed plaintiff on to the toilet and yelled at him, causing nurse Robinson to leave the room in disgust; and tampered with plaintiff's

medications.

Plaintiff filled out a second grievance on June 7, 2005, that was received by the counselor's office on June 15, 2005 ("June grievance"). In that grievance, plaintiff states that he was injured on March 18, 2005, that he underwent surgery on the same day, had limited mobility until he was sent to UIC on March 28 for physical therapy, returned to Dixon on April 8, and was unable to write until April 9. The remaining portion describes plaintiff's grievance:

> Because of inadequate security and observation at the Dixon C.C.'s Opthalmic Lab Industry and faulty medical care by Dixon C.C.'s medical personnel, I have suffered this injury and received inadequate medical attention and care to rehabilitate/recover from my condition.

Under the section for the relief the prisoner seeks, plaintiff wrote: "appropriate measures." A grievance officer found the allegations to be unsubstantiated, and the Chief Administrative Officer concurred. On appeal, the Administrative Review Board ("ARB") determined that the grievance was untimely, as it was filed over sixty days from the date of his injury. Plaintiff was advised that his grievance would not be addressed further. It is undisputed that prior to filing his grievances, plaintiff received a copy of the Dixon CC Orientation Manual, and that all grievances must be filed in accordance with Department Rule 504(f), "Grievance Procedures for Committed Persons."

In 2007, plaintiff filed his complaint. Only counts III and IV involve the defendants now moving for summary judgment. In Count III, plaintiff alleges that the medical services provided by Colgan fell below a level reasonably commensurate with a prudent professional standard. In Count IV, plaintiff alleges that nurses Cline and Noble, among other defendants, subjected plaintiff to inhumane conditions by confiscating plaintiff's pillows and blankets, and that nurses Cline and Gravdahl, among other defendants, physically abused plaintiff by leaving him standing in the shower for hours unattended to punish him for filing grievances.

## II. DISCUSSION

Summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party must identify the specific portions of the record which it believes establishes "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). By supporting its motion with a Local Rule 56.1 statement of facts, the moving party shifts the burden of production to the non-moving party, who must then put forth specific facts that demonstrate a genuine issue for trial. Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006); Fed. R. Civ. P. 56(e)(2).

Plaintiff did not respond to defendants' motion. Accordingly, defendants' statement of facts are deemed admitted. See Raymond, 442 F.3d at 608 (stating that plaintiff's "failure to respond in kind results in deeming admitted the uncontroverted statements in [defendant's] Local Rule 56.1(a) submission"). This does not mean that the motion is automatically granted; rather, "[t]he ultimate burden of persuasion remains with [the moving party] to show that it is entitled to judgment as a matter of law." Id.

### A. Prisoner Litigation Reform Act

Defendants contend that they are entitled to judgment as a matter of law under the Prisoner Litigation Reform Act ("PLRA") because plaintiff failed to exhaust his administrative remedies before filing his lawsuit. Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999). If a prisoner has failed to exhaust administrative remedies, the district court must dismiss the complaint. Perez, 182 F.3d at 535; see also Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) ("This circuit has taken a strict compliance approach

| STATEMENT |
|---|

to exhaustion.").

The purpose of the exhaustion requirement is to afford a prison the chance to address complaints before being subjected to suit. Jones v. Bock, 549 U.S. 199, 204 (2007). To best serve that purpose, a prisoner must file grievances "in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Illinois has a three-step grievance process, governed by Title 20 of the Illinois Administrative Code sections 504.810 through 504.870. An inmate must first attempt to resolve the issue with a prison counselor, and if that is unsuccessful, the prisoner may then file a written grievance. 20 Ill. Admin. Code § 504.810(a). Finally, if the grievance is dismissed, the prisoner may appeal to the ARB. Id. at § 504.850(a). A prisoner must file the grievance within 60 days of the discovery of the incident or problem that gives rise to his claim. Id. at § 504.810(a). If the grievance is not timely, but the prisoner can demonstrate good cause for his delay, it shall be considered. Id.; Dixon v. Page, 291 F.3d 485, 489 (7th Cir. 2002).

In addition to the timing and procedural requirements, a grievance must also contain sufficient facts to "alert[] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). Section 504.810(b) sets forth the substantive requirements:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(a).

Before proceeding to the merits, the court must determine whether "the prisoner has properly exhausted his administrative remedies." Pavey v. Conley, 544 F.3d 739, 741-42 (7th Cir. 2008). Failure to exhaust is an affirmative defense that must be pleaded and proved by the defendant. Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005).

B. Defendant Colgan

The allegations against defendant Colgan in Count III of plaintiff's complaint relate solely to the alleged misconduct that occurred on March 18, 2005. The only grievance that plaintiff filed that could relate to that misconduct is the June grievance. Defendants argue that plaintiff did not exhaust his administrative remedies with respect to defendant Colgan because the June grievance was untimely. The court agrees.

The June grievance was dated June 7, 2005, and it was received by the counselor's office on June 15, 2005. Plaintiff's allegations in that grievance relate to the alleged "inadequate security and observation at the Dixon C.C.'s Opthalmic Lab Industry and faulty medical care by Dixon C.C.'s medical personnel," and "inadequate medical attention and care to rehabilitate/recover from my condition." Plaintiff stated that he had little ability to move until March 28 and was unable to write until April 9. The ARB rejected plaintiff's grievance because it was not filed within 60 days of March 18, 2005, the date of plaintiff's injury. Perhaps plaintiff included information regarding his immobility and inability to write as justification for his late filing; however, plaintiff does not explain why this prevented him from filing before May 18, 2005, especially since plaintiff was able to file a separate grievance on April 20, 2005. Regardless, it is undisputed that the ARB declined to consider plaintiff's grievance because he failed to follow the administrative requirements.

The court agrees that the June grievance was untimely in so far as it related to alleged misconduct that occurred on and prior to March 18, 2005. Accordingly, summary judgment is granted in favor of defendant Colgan on Count III.

| STATEMENT |
|---|

### C. Defendants Gravdahl, Noble and Cline

The court now turns to whether plaintiff exhausted his administrative remedies with respect to the claims against Gravdahl, Noble and Cline in Count IV by filing either the April or June grievance. The court takes each grievance in turn.

#### 1. April Grievance

The April grievance is the only grievance filed by plaintiff that complains about the conduct of a specific treater. However, the only impermissible conduct that it alerted Dixon to was that of nurse Porter. Plaintiff stated that Porter confiscated his pillows and blankets, pushed him on the toilet, and tampered with his medication. Plaintiff further stated that Noble did not engage in any wrongdoing and instead disapproved of Porter's actions and, at times, tried to help him. While plaintiff described Porter's alleged misconduct in detail, at no point does plaintiff suggest that anyone other than Porter abused him, or that he experienced any misconduct other than having his pillow and blanket taken, being pushed on the toilet, and being given incorrect medication. Plaintiff cannot now change his story while still relying on the grievance for exhaustion purposes. Accordingly, the court finds that the April grievance did not exhaust plaintiff's administrative remedies with respect to the Count IV claims of inhumane treatment and physical abuse against defendants Gravdahl, Noble and Cline.

#### 2. June Grievance

The only question remaining before the court is whether plaintiff exhausted his remedies with respect to his Count IV claims against defendants Gravdahl, Noble and Cline by filing his June grievance. As an initial matter, it is unclear whether the ARB was correct in its determination that the June grievance was untimely with respect to all claims contained therein. The June grievance does not specify when the alleged misconduct occurred, nor does it specify any kind of relief that would have helped Dixon or the court determine a time frame for the care plaintiff complained of. It is possible to read the grievance in two ways. One logical interpretation is that the "faulty medical care" and "inadequate medical attention and care to rehabilitate/recover" refers to the care plaintiff received when he was injured. In other words, plaintiff is complaining that if he had better care on March 18, 2005, he would not have been permanently injured and could have recovered. If that is the case, then the entire grievance was untimely. A second logical interpretation is that the "faulty medical care" and "inadequate medical attention and care to rehabilitate/recover" occurred, at least in part, sometime after plaintiff returned to Dixon on April 8, 2005. If so, then it is possible that those portions of the grievance were timely, and that those portions were never addressed by the ARB. The court notes that the difficulty in determining whether the grievance was timely by deciphering what conduct plaintiff complains of is the first indication that the June grievance is substantively deficient.

Even assuming, however, that portions of the June grievance were timely, the court finds that the substance of the grievance was not sufficient to alert Dixon to any of the misconduct alleged in Count IV against Cline, Noble, and Gravdahl, namely, that defendants subjected plaintiff to inhumane treatment and physical abuse. The June grievance does not mention any defendant by name. Plaintiff knew Noble, as evidenced by plaintiff's prior grievance, and yet failed to identify her in the June grievance. At the very least, plaintiff was required to generally describe a treater who abused him, or even to identify the treaters as Dixon nurses. More importantly, however, while the grievance complains about the sufficiency of the medical attention plaintiff received, it says nothing about any misconduct or abuse, let alone retaliation for writing grievances. Plaintiff needed to allege that misconduct or abuse occurred and generally describe it. Because the June grievance failed to identify misconduct or describe those who treated him badly, it did not provide the prison with any opportunity to address plaintiff's concern that he was being abused by Dixon nurses. Accordingly, the court finds that plaintiff did not exhaust his remedies with respect to the claims made against Cline, Noble, and Gravdahl in Count IV, and they are entitled to summary judgment.

**STATEMENT**

III. CONCLUSION

For the foregoing reasons, the court grants defendants' motion for summary judgment. Defendants Colgan, Gravdahl, Noble and Cline are dismissed with prejudice from this case.